IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LAURA BEISEL,                                        Case No. 3:12-CV-00623-AC

               Plaintiff,                           FINDINGS AND
                                                     RECOMMENDATION

      v.

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

_____Defendant._____

ACOSTA, Magistrate Judge:

      Laura Beisel ("plaintiff") seeks judicial review of a final decision by the Commissioner of

Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB")

_____

     [1] Carolyn W. Colvin became the Acting Commissioner in February 2013 and is therefore
substituted for Michael J. Astrue as defendant in this action. *See* Fed. R. Civ. P. 25(d); 42 U.S.C.
§ 405(g).

Page 1 - FINDINGS AND RECOMMENDATION

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. *See* 42 U.S.C. §§ 401-403, 1381–83(f). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision should be affirmed and this case dismissed.

### *Procedural Background*

Plaintiff filed applications for SSI and DIB on June 22, 2007, alleging disability as of April 2, 2001. (Tr. 109-19, 152.) Both applications were denied initially and upon reconsideration. (Tr. 56-64, 66-71.) A hearing was held on December 10, 2009 before Administrative Law Judge ("ALJ") Donna Montano. (Tr. 24-51, 545-72.) On January 4, 2010, ALJ Montano issued a decision finding plaintiff not disabled. (Tr. 8-15, 521-28.) Plaintiff timely requested review of ALJ Montano's decision and, after the Appeals Council denied her request for review, plaintiff filed a complaint in this District. (Tr. 1-4, 533-36.) Thereafter, the Commissioner agreed to voluntarily remand the case for further proceedings and, accordingly, on June 23, 2011, the parties entered into a Stipulation for Remand. (Tr. 510-11.) Pursuant to the parties' stipulation, the Honorable Marco Hernandez issued a Judgment, reversing and remanding the ALJ's decision ("Remand Order"). (Tr. 508-09.) On July 14, 2011, the Appeals Counsel vacated ALJ Montano's decision and remanded the matter "for further proceedings consistent with the order of the court." (Tr. 515-17.) Notably, the Appeals Council instructed the ALJ to "[o]btain evidence from a psychological medical expert, if available, to clarify the nature and severity of the claimant's mental impairment." (Tr. 516.)

A second hearing was held on January 3, 2012 before ALJ Dan R. Hyatt, at which plaintiff testified and was represented by counsel; a vocational expert also testified. (Tr. 484-507.) Because a medical expert ("ME") was unavailable, ALJ Hyatt determined that plaintiff would instead undergo

a comprehensive psychological evaluation. (Tr. 467.) On January 13, 2012, ALJ Hyatt issued a second decision finding plaintiff not disabled. (Tr. 467-77.) After the Appeals Council declined her request for review of ALJ Hyatt's decision, plaintiff filed an appeal in this Court.

### Factual Background

Born on April 15, 1977, plaintiff was 23 years old on the alleged onset date of disability and 34 years old on the date of the second hearing. (Tr. 109, 112.) Beginning in the fourth grade, plaintiff attended special education classes and graduated from high school with a modified diploma. (Tr. 28, 309.) She previously worked as a warehouse stocker, telemarketer, and fast food worker. (Tr. 157, 164-70, 501-04.)

### Standard of Review

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

*The ALJ's Findings*

At step one of the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 469.) At step two, the ALJ found that plaintiff had the following severe impairment: borderline intellectual functioning.[2] (Tr. 470.) At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. (Tr. 470-72.)

As such, the ALJ continued the sequential evaluation process to determine how plaintiff's medical limitations affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except that she was "limited to performing simple, routine tasks." (Tr. 472-76.) At step four, the ALJ concluded that plaintiff was capable of performing her past relevant work as a telemarketer and, accordingly, she was not disabled within the meaning of the Act. (Tr. 477.)

*Discussion*

Plaintiff argues that the ALJ erred by: (1) not finding her presumptively disabled at step three under listing 12.05C; and (2) failing to comply with the Remand Order. (Pl.'s Opening Br. 5.)

I.     Listing 12.05C

Plaintiff first asserts that the ALJ erred in determining that her impairments did not meet listing 12.05C at step three. (*Id.* at 5-12.) To be presumptively disabled under listing 12.05C, the

---

[2] The title of the ALJ's step two finding lists obesity as an additional severe impairment. (Tr. 470.) However, the accompanying narrative discussion makes clear that this was a clerical error: "Medical records reflect that the claimant is also obese [but they] do not indicate that the claimant's obesity causes more than a minimal limitation in her ability to perform basic work activity . . . As a result, I find that the claimant's obesity is a non-severe medically determinable impairment." (*Id.*)

plaintiff bears the burden of demonstrating that the following elements are met: "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning with an onset before age 22; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Pedro v. Astrue*, 849 F. Supp. 2d 1006, 1009-11 (D. Or. 2011) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05).

A.    Onset Before Age 22

It is undisputed that plaintiff's impairment in intellectual functioning was evident prior to the age of 22. (Pl.'s Opening Br. 7-8; Def.'s Resp. Br. 7 n.3.)

B.    Valid Verbal, Performance, or Full-Scale IQ of 60 Though 70

The record contains four sets of IQ test results. In November 1994, when plaintiff was 17 years old, a school psychologist performed an IQ test; plaintiff had a verbal IQ of 80, a performance IQ of 83, and a full-scale IQ of 79. (Tr. 321-23.) On August 1, 2007, plaintiff underwent a second IQ exam with Karen Bates-Smith, Ph.D. (Tr. 252-57.) At that time, plaintiff had a verbal IQ of 74, a performance IQ of 79, and a full-scale IQ of 75. (Tr. 255.) Eight days later, on August 9, 2007, David Gostnell, Ph.D., administered a different kind of IQ test that revealed a verbal IQ of 61, a performance IQ of 82, and a full-scale IQ of 69. (Tr. 260-67.) On November 29, 2011, Dr. Bates-Smith completed plaintiff's final round of IQ testing. (Tr. 628-36.) Verbal and performance IQ were "no longer calculated" pursuant to the testing method employed by Dr. Bates-Smith; however, plaintiff's full-scale IQ was 76. (Tr. 631.)

Thus, with the exception of those obtained by Dr. Gostnell in 2007, plaintiff's IQ scores did not result in a valid verbal, performance, or full scale IQ of 60 to 70. However, the ALJ rejected Dr.

Gostnell's assessment[3] and plaintiff does not now challenge that finding. (Tr. 472-74; *see generally* Pl.'s Opening Br.; Pl.'s Reply Br.)  Nevertheless, even assuming that Dr. Gostnell's report was improperly rejected, the ALJ's finding concerning prong two of listing 12.05C was supported by substantial evidence; three out of the four tests administered, including the test that transpired a mere eight days prior to Dr. Gostnell's assessment, indicate that plaintiff's IQ scores in the relevant categories all exceed 70. (*Compare* Tr. 255, 321-23, 631, *with* Tr. 264.)  Further, plaintiff's most recent IQ score, from Dr. Bates-Smith's 2011 assessment, is highly probative. *See Diaz v. Astrue*, 2012 WL 43622, *4–6 (E.D. Cal. Jan. 9, 2012) (in evaluating whether prong two of listing 12.05C was met, the ALJ properly relied on claimant's most recent IQ test results).  This score, which was obtained over four years after Dr. Gostnell's evaluation and which is consistent with Dr. Bates-Smith's previous results, confirmed that listing 12.05C was not met in the case at bar.  Accordingly, the ALJ's step three finding was based on the proper legal standards and is supported by substantial evidence.  Therefore, the ALJ's step three finding should be affirmed.

C.    Additional and Significant Work-Related Limitation of Function

"[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987).  As such, a claimant who has a severe impairment as

---

[3] Specifically, the ALJ determined that Dr. Gostnell's IQ evaluation was inconsistent with his other findings regarding plaintiff's ability to function. *See Thresher v. Astrue*, 283 Fed.App. 473, 475 (9th Cir. 2008) ("[w]e do not doubt that an ALJ can decide that an IQ score is invalid"); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ may reject a doctor's opinion that is inconsistent with the doctor's own "clinical notes" and "other recorded observations").  For instance, the ALJ noted that, despite reporting the lowest IQ scores, Dr. Gostnell opined that plaintiff "demonstrate[d] a capacity for adequate learning and retention of simple visual and verbal information through repetition, sufficient for the acquisition of new job skills and knowledge." (Tr. 267, 472-74.)

defined at step two of the disability analysis, apart from the decreased intellectual function, meets the third prong of listing 12.05C. *Id.* at 633 n.3 (citation omitted).

As the ALJ noted, there is no evidence that plaintiff's obesity imposes an additional and significant work-related limitation of function. (Tr. 180-87, 256, 263, 470, 633.)  In fact, plaintiff's activities of daily living are fairly extensive and include waking up at 6:30 a.m. to get her young daughter to school, making breakfast, cleaning the house, performing personal hygiene, shopping for household items, using public transportation, and taking care of her mother "without reminders or assistance." (Tr. 633.) Plaintiff also reported that her "[h]obbies include doing ceramics with her daughters, swimming, fishing, hiking, and collecting marbles, keys, and spoons." (*Id.*)  Based on this evidence, the ALJ concluded that plaintiff's obesity, while medically determinable, was not a severe impairment[4] because it did not "caus[e] more than a minimal limitation in her ability to perform basic work activity." (Tr. 470.)

Plaintiff does not challenge this finding and, additionally, did not identify obesity as one of the impairments that limited her ability to work. (Tr. 156, 194; *see generally* Pl.'s Opening Br.; Pl.'s Reply Br.)  Rather, in support of her claim, plaintiff cites to ALJ Montano's 2010 decision, which states that "obesity may be found to 'meet' the requirements of a listing," and a "Vocational Rehabilitation Services" report, wherein plaintiff's caseworker noted that "[i]mpediments from [her obesity] are unclear; her mobility may be limited by her weight, or general physical condition and endurance may be impaired." (Pl.'s Opening Br. 12 (citing Tr. 389, 524).)  Plaintiff's argument is

---

[4] Plaintiff argues that her obesity satisfies the third prong of listing 12.05C regardless of whether the ALJ determined that it was severe at step two. (Pl.'s Opening Br. 12 n.7.) Assuming, without deciding, that a non-severe impairment can fulfill this requirement, plaintiff's argument nonetheless fails for the reasons discussed throughout section I(C).

unavailing; ALJ Montano's opinion is irrelevant, as it was vacated pursuant to the Appeals Council's remand order, and speculation from plaintiff's vocational rehabilitation caseworker regarding the possible implications of her weight are insufficient to affirmatively establish more than a slight or minimal work-related restriction, especially in light of the other evidence of record. Thus, while obesity potentially could satisfy the third element of listing 12.05C, there is no indication here that plaintiff's obesity caused any work-related limitation of function, let alone a significant one. For this additional reason, the ALJ's step three finding should be upheld.

II.    Compliance with the Remand Order

Plaintiff next contends that "the ALJ erred as a matter of law when he deviated from the District Court's explicit remand ordering him to obtain evidence from a psychological medical expert." (Pl.'s Opening Br. 13-14.)  Plaintiff argues that this error, alone, requires reversal of the ALJ's decision and entitles her to the immediate payment of benefits. (*Id.* (citing *Ischav v. Barnhart*, 383 F.Supp. 1199, 1214 (C.D. Cal. 2005).)  Plaintiff, however, does not specifically challenge any of the ALJ's findings or address how the ALJ's alleged failure to follow the Remand Order was harmful.  (*Id.*; Pl.'s Reply Br. 1-4.)

The reviewing court's remand order may include "detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed." *Sullivan v. Hudson*, 490 U.S. 877, 885-86 (1989) (citation omitted).  The ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b); *Brink v. Astrue*, Case No. 3:12-CV-01131-MA, 2013 WL 1785803, *4 (D. Or. Apr. 24, 2013).  Nevertheless, the failure to follow a remand order is not a proper basis for the reviewing court to reverse or remand the ALJ's

final decision regarding a claimant's disability. *See Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1136–1138 (9th Cir. 2011) (district court erred in awarding benefits for failure to follow remand order without first ascertaining whether the claimant was disabled). Rather, "[t]he ALJ's errors are relevant only as they affect that analysis on the merits. A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Id.* at 1138. Accordingly, irrespective of whether the ALJ complied with the Remand Order, the issue before this Court is whether the ALJ's decision is based on substantial evidence and is free of legal error. *See Strauss*, 635 F.3d at 1138; *see also Hernandez-Devereaux v. Astrue*, 614 F. Supp. 2d 1125, 1134 (D. Or. 2009) ("to the extent that the ALJ here failed to properly follow the [remand] instructions, she committed reversible error unless the errors were harmless, i.e., they would not have affected the ALJ's ultimate conclusions") (citation omitted).

In this case, because she does not challenge any of the ALJ's findings outside of his failure to comply with the Remand Order and does not otherwise provide any argument or evidence regarding how this alleged error was harmful,[5] "plaintiff neglected to provide a basis to reverse and remand the ALJ's decision." *Brink*, 2013 WL 1785803 at *4; *see also Wick v. Astrue*, Case No. 3:08-CV-06108-MO, 2009 WL 2393106, *2-15 (D. Or. July 31, 2009) (ALJ's lack of compliance with the Ninth Circuit's remand order only warranted reversal to the extent that the court found harmful error in regard to the other issues expressly raised and argued by the plaintiff) (citing *Sullivan*, 490 U.S. at 885-86). Further, the Court's independent review of the record does not

---

[5] The court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued" in the claimant's briefs. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (citation and internal quotations omitted); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (arguments not raised in the claimant's opening brief are "deem[ed] waived").

indicate that the ALJ's failure to procure evidence from a ME, especially in light of the substitute comprehensive psychological evaluation that plaintiff underwent,[6] was prejudicial or relevant to the ultimate disability determination. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (outlining harmful error standard); *see also McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2011) (as amended) ("[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm"). Therefore, to the extent that the ALJ erred in failing to follow the Remand Order, such an error was harmless. As such, the ALJ's decision should be affirmed.

### *Recommendation*

For the reasons stated above, the Commissioner's decision should be AFFIRMED and this case DISMISSED.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

---

[6] The Court is mindful of the fact that a ME and medical examination generally serve discrete purposes under the Act. Here, however, the purpose of the ME was "to clarify the nature and severity of the claimant's mental impairment." (Tr. 508-17.) Thus, while not dispositive, it is unclear how Dr. Bates-Smith's 2011 evaluation, which assessed the nature of severity of plaintiff's intellectual functioning, contravened the Remand Order. (Tr. 467.)

Page 11 - FINDINGS AND RECOMMENDATION

DATED this 20th day of May 2013.

JOHN V. ACOSTA
United States Magistrate Judge